J-S47041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DAVID MORGAN ROTHHAAR | : | |
| | : | |
| Appellant | : | No. 64 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 29, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0003675-2022

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED OCTOBER 27, 2025**

## I. Introduction

David Rothhaar appeals from the judgment of sentence imposing four to eight years of incarceration, following his convictions for burglary, criminal trespass, and possession of an instrument of a crime.[1] Rothhaar claims the lower court should have granted his motion to suppress the Commonwealth's evidence or, alternatively, that the Commonwealth witness Russell Mitchell should not have been allowed to testify. Because we find that the suppression claims are waived and that his evidentiary issue has no merit, we affirm.

## II. Factual & Procedural Background

On June 28, 2022, around 9:40 p.m., Rothhaar broke into the home of Robert Capriotti. Mr. Capriotti heard Rothhaar making noise in the upstairs rooms and running down the steps. Mr. Capriotti called 911 at 9:46 p.m. Mr.

_____

[1] 18 Pa.C.S.A. §§ 907(a), 3502(a)(1)(ii), 3503(a)(1)(ii), and 3921(a).

Capriotti never saw Rothhaar in the house, but Rothhaar left his DNA on a windowsill in Mr. Capriotti's garage.

At 9:53 p.m., in response to the 911 call, a police sergeant drove into Mr. Capriotti's neighborhood. He saw Rothhaar crossing the street two doors down from the Capriotti house. Rothhaar was the only person outside at that hour of the night.

The sergeant suspected that Rothhaar might be the burglar, because he carried a backpack in his hand. The sergeant knew, from many prior burglary investigations, that burglars typically carry bags with them to hide their tools and stolen goods. The sergeant stopped Rothhaar to investigate if he was involved with the break-in. Police then learned of a warrant for Rothhaar's arrest, arrested him, and searched his backpack. Inside was a small crowbar, a metal tool, and a pair of gloves. The gloves belonged to Mr. Capriotti.

Once at the police station, Rothhaar provided investigators with a DNA sample, which matched the DNA found on Mr. Capriotti's windowsill. The Commonwealth charged Rothhaar with burglary and related offenses.

Rothhaar filed a motion to suppress the Commonwealth's evidence. He contended that the sergeant detained him "in violation of his rights as secured to him by the Fourth and Fourteenth Amendment to the United States

constitution[2] and Article I, § 8 of the Pennsylvania constitution[3]." Omnibus Pre-Trial Motion at 2. Critically, the motion did not claim greater protection under Article I, § 8 of the state constitution than the protections that the Fourth Amendment confers. Nor did the motion claim the suppression court should depart from federal jurisprudence in any manner. *See id.* at 2-3. In other words, Rothhaar's suppression motion treated the federal and state constitutional protections as coextensive.

On January 9, 2023, the suppression court held an evidentiary hearing on the motion. The Commonwealth presented testimonial and video evidence revealing the above facts. A week later, the suppression court ruled that the sergeant lacked reasonable suspicion to detain Rothhaar for an investigative detention. It entered an order suppressing the Commonwealth's evidence, as well as Rothhaar's various statements to the police.

The Commonwealth moved for reconsideration. Among other issues, the prosecution contended the attenuation doctrine, as defined and applied in

---

[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amnd. IV.

[3] "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures . . . ." Pa. Const. art. I, § 8.

*Utah v. Strieff*, 579 U.S. 232 (2016)[4], allowed for admission of the evidence, even if the police lacked reasonable suspicion to detain Rothhaar.

Rothhaar filed nothing in opposition to the Commonwealth's motion for reconsideration. The suppression court granted reconsideration. On January 31, 2023, the court conducted a second suppression hearing, where it received additional testimony and evidence.

At the close of the second hearing, the parties argued over admissibility of a video from the sergeant's dashboard camera, which the sergeant did not realize existed until a day before the second hearing. *See* N.T., 1/31/23, at 73-81. The suppression court deemed the dashboard video to be inadmissible under the discovery rules.

The Commonwealth also claimed that, even if there was no reasonable suspicion to stop Rothhaar, the suppression court should refuse to exclude its evidence, based on the attenuation doctrine and *Strieff*. *See id.* at 82-87. The Commonwealth argued that the facts of *Strieff* were identical to this case. Because Rothhaar had a valid arrest warrant when the sergeant detained him, the Commonwealth suggested the warrant attenuated whatever constitutional taint the evidence suffered from the unreasonable investigative detention.

_____

[4] *See Utah v. Strieff*, 579 U.S. 232 (2016) (holding that, under the Fourth Amendment, evidence seized during a search incident to a suspect's arrest is admissible, because the discovery of an outstanding arrest warrant for the suspect attenuated the connection between an unlawful investigative stop and the seizure of incriminating evidence during the search incident to that arrest).

In response, counsel for Rothhaar said, "I don't think *Strieff* affects this court's ruling." *Id.* at 87. "[A]lthough [*Strieff*] is a United States Supreme Court case, Pennsylvania typically provides greater protection for its citizens. And it's clear that *Strieff* has not yet been adopted in Pennsylvania." *Id.* But, instead of analyzing the multifactor test of *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991), and asking the suppression court to depart from the Fourth Amendment jurisprudence as articulated in *Strieff*, defense counsel argued that *Strieff* was distinguishable on its facts from Rothhaar's case. *See id.* at 87-91.

Furthermore, defense counsel never discussed *Edmunds* during her argument to the suppression court. Instead, she referred the court to *Hudson v. Michigan*, 547 U.S. 586 (2006) (holding that violation of the "knock-and-announce" rule when executing search warrant does not require suppression of evidence discovered during the unannounced search). *See id.* at 88. Hence, like his Omnibus Pre-Trial Motion, Rothhaar's post-hearing argument on the attenuation doctrine treated the protections of the Fourth Amendment and Article I, § 8 as coextensive.

The Commonwealth then rebutted defense counsel's implication that Pennsylvania courts needed to adopt *Strieff* in order for it to apply. In doing so, the prosecutor made the only reference to *Edmunds*. He did so to explain how the defense could have made a departure argument to the suppression court, if she desired to present such a claim. The prosecuting attorney said:

in terms of the ***Strieff*** case . . . the Fourth Amendment of the United States constitution is adopted by Pennsylvania. There would need to be a specific finding that ***Utah v. Strieff*** is not applicable under the Pennsylvania constitution, not that it does not apply. It has to be the other way around.

Their [*i.e.*, the Supreme Court of the United States'] logic does not apply under the Pennsylvania constitution . . . that would implicate ***Commonwealth v. Edmunds*** . . . where, essentially, the court would have to go through an extensive analysis to find that under the Pennsylvania constitution, and based off of an extensive analysis looking at other states and other jurisdictions, and [rule that] under the Pennsylvania constitution you're entitled to greater rights. It's a substantial analysis. But, again, the Fourth Amendment of the U.S. Constitution is adopted by Pennsylvania. Your Honor can say, yes, I believe that [the] logic from ***Utah v. Strieff*** applied here. And the reason behind it, I think, is also reflected in other Pennsylvania cases where the analysis comes down to privacy interests versus reasonableness.

***Id.*** at 91-92.

The Commonwealth then provided the suppression court with a case from this Court, which the prosecutor believed was similar to ***Strieff***. ***See id.*** at 93 (citing ***Commonwealth v. Mullen***, 267 A.3d 507 (Pa. Super. 2021) (holding that parole agents had probable cause to enter the residence of a third party to execute an arrest warrant against a defendant, notwithstanding the heightened privacy interest of the third party in the residence)).

The hearing then ended. Neither party submitted a post-hearing brief. Thus, Rothhaar made no argument that the heightened protections of Article I, § 8 or the multifactor test of ***Edmunds*** required the suppression court to depart from the holding of ***Strieff*** on any independent, state-constitutional ground.

- 6 -

On February 8, 2023, the suppression court issued an order vacating its prior order and denying the motion to suppress. While the suppression court reiterated its original conclusion that the sergeant lacked reasonable suspicion to detain Rothhaar, the court ruled that **Strieff** exempted the evidence from the exclusionary rule of the Fourth Amendment.

Admittedly, the suppression court mentioned **Edmunds** in its opinion denying the motion to suppress, but the court did not analyze the **Edmunds** factors. **See** Findings of Fact and Conclusions of Law, 5/1/23, at 7. Instead, it merely observed that "appellate courts have neither expressly accepted nor rejected the ruling in **Strieff**" as it relates to **Edmunds**. **Id.** The suppression court did not consider whether there were adequate and independent state grounds under Article I, § 8 that compelled it to depart from **Strieff**. Hence, the suppression court, due to the lack of a departure argument by Rothhaar, treated the Fourth Amendment and Article I, § 8 as coextensive and naturally applied the Fourth Amendment jurisprudence as articulated in **Strieff**.

Eight months later, the Commonwealth tried Rothhaar by jury.

During the defense's opening statement, Rothhaar's counsel attempted to concoct reasonable doubt as to why Rothhaar's DNA was on Mr. Capriotti's windowsill. "More specifically, counsel argued to the jury in his opening statement that [Rothhaar] helped a friend do construction work on Mr. Capriotti's home and then cross-examined Mr. Capriotti on the possibilities of his contractor having a subcontractor." Trial Court Opinion, 2/7/24, at 13. In

other words, defense counsel insinuated that Rothhaar was the unidentified subcontractor.

However, after Mr. Capriotti testified, the Commonwealth located Russell Mitchell, the contractor who repaired Mr. Capriotti's windows. That evening, the Commonwealth prepared a witness report for Mr. Mitchell and provided it to defense counsel at 9:48 p.m. *See* T.N., 10/11/23, at 6. When the court reconvened the following morning, defense counsel objected to Mr. Mitchell being called as a witness, because his report was "not provided in initial discovery." *Id.* He said, "I'm scared to give whatever theory I have at this point to anyone at the DA's office for fear that if I tell them, they're going to go out and do an investigation and close any potential holes that there may be in their case . . . ." *Id.* at 7.

The Commonwealth responded that the defense opened the door for Mr. Mitchell to testify. It said that, by suggesting to the jury that there was an innocent reason for Rothhaar's DNA to be on Mr. Capriotti's windowsill, the defense had injected a new issue of fact into the case that made Mr. Mitchell's testimony relevant. *See id.* at 7-9. Prior to the defense's attempt to create an innocent explanation for Rothhaar's DNA being on Mr. Capriotti's windowsill, the Commonwealth had no reason to prove Rothhaar was not a subcontractor at the home.

Defense counsel replied that he was able to come up with the claim that Rothhaar may have been a subcontractor working on the house. Thus, in his

mind, the Commonwealth should have predicted such a contention and sought to disprove it during the pretrial investigation. *See id.* at 11-12.

The trial court answered, "the fact that you were able to think of that doesn't mean that the Commonwealth is required to anticipate that. They thought the case was simple. You introduced it to the case . . . ." *Id.* at 12. The court then deferred resolution of the objection for a few hours.

When the court adjourned for lunch, argument resumed on whether Mr. Mitchell could testify. Defense counsel offered a case where the Supreme Court of Pennsylvania reversed the denial of a mistrial, because DNA was admitted after defense counsel contended in the opening statement that there was no physical evidence of a rape. Thus, allowing Mr. Mitchell to testify would make "defense counsel appear to be incredible and lose trust with the jury . . . ." *Id.* at 115. The trial court overruled Rothhaar's objection and allowed Mr. Mitchell to testify. *See id.* at 133. Mr. Mitchell testified that he did not use a subcontractor to replace Mr. Capriotti's windows.

Ultimately, the jury convicted Rothhaar of burglary, criminal trespass, and possession of an instrument of a crime. The court sentenced Rothhaar as described above, and this timely appeal followed.

## III. Analysis

Rothhaar raises two appellate issues as follows:

1. Did the [suppression] court err in denying [his] motion to suppress?

2. Did the trial court err in permitting the Commonwealth to present the testimony of Russell Mitchell?

- 9 -

Rothhaar's Brief at 14. We address each issue in turn.

*A.* *Denial of Suppression*

As his first issue, Rothhaar contends that the suppression court erred in granting the Commonwealth's motion to reconsider and vacating its order that suppressed the Commonwealth's evidence and Rothhaar's statements to the police. Rothhaar advances two arguments to support his first claim of error. He has waived both arguments.

For his first argument, Rothhaar suggests the suppression court should not have granted the motion for reconsideration, because "the Commonwealth advanced a new legal theory after the [suppression] court issued an order granting the motion to suppress." Rothhaar's Brief at 15. In other words, he contends the Commonwealth committed waiver by failing to raise all of its theories opposing his motion to suppress at the first suppression hearing, on January 9, 2023. ***See id.*** at 17-22.

Rothhaar relies upon this Court's decisions holding that, after issuance of an order and opinion granting suppression, the Commonwealth cannot offer new legal theories to oppose suppression in a motion for reconsideration. ***Id.*** at 18-21 (citing ***Commonwealth v. Smith***, 304 A.3d 35 (Pa. Super. 2023); ***Commonwealth v. Skipper***, 277 A.3d 617 (Pa. Super. 2022)). He contends that the Commonwealth did what our precedents prohibit, and the suppression court erred by considering whether the attenuation doctrine applied. ***See id.*** at 21.

The Commonwealth responds that Rothhaar waived this argument. It claims that Rothhaar failed to object or argue below that the Commonwealth should be precluded from raising the attenuation doctrine in its motion for reconsideration. *See* Commonwealth's Brief at 8-9. The Commonwealth further notes that Rothhaar agreed to reopen the record because he wanted to seek suppression of his DNA evidence collected with his consent while in custody, which he failed to raise at the first suppression hearing. *See id.* at 8.

In reply, Rothhaar argues that he objected to and preserved this issue at the second suppression hearing. *See* Rothhaar's Reply Brief at 5-6. He further contends that he did not agree to reopen the record. Instead, he claims that he was responding to the suppression court's indication that it was inclined to grant the motion to reconsider. *See id.* at 4-7.

The issue of waiver presents a question of law; our standard of review is *de novo*, and our scope of review is plenary. The Supreme Court of Pennsylvania has said, "it is axiomatic that issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal." *Trigg v. Children's Hosp. of Pittsburgh of UPMC*, 229 A.3d 260, 269 (Pa. 2020) (emphasis added) (citing Pa.R.A.P. 320(a)).

The record reflects that Rothhaar waived this argument on two bases. First, contrary to his claim, he did not raise it in the suppression court. He made no objection or argument that the Commonwealth should not be allowed to raise its alternative legal theory under the attenuation doctrine. *See* N.T.,

- 11 -

1/31/2023. Indeed, the citations to the notes of testimony in Rothhaar's Reply Brief involve defense counsel's objection to the Commonwealth's belated attempt to admit a dashcam video from a police vehicle. He made no objection to the Commonwealth's invocation of the attenuation doctrine or **Strief**, **supra**.

After the second suppression hearing, the suppression court heard argument from both parties regarding the attenuation doctrine. **See id.** at 81-94. Defense counsel argued the merits of why the attenuation exception should not apply to this case. **See id.** at 87-91. The defense never objected to consideration of the doctrine on procedural grounds, such as waiver by the Commonwealth. Therefore, Rothhaar's argument of Commonwealth waiver is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Moreover, Rothhaar failed to include this claim of Commonwealth waiver in either of his 1925(b) Statements. Thus, he has waived his argument that the Commonwealth waived reconsideration and the federal-attenuation-doctrine exception to the exclusionary rule.

For his second argument, Rothhaar states, "there is no good faith exception pursuant to Article I, § 8, of the Pennsylvania constitution, [thus,] the trial court erred in applying the attenuation doctrine under the Pennsylvania constitution." **Id.** (citing **Edmunds**, **supra**). "A review of the **Edmunds** factors makes clear that the Pennsylvania constitution provides greater protections than the United States Constitution, rendering the

attenuation doctrine untenable as a matter of Pennsylvania constitutional law." *Id.* at 15-16. Rothhaar accuses the suppression court of "reading the attenuation doctrine, which focuses on good faith, into the Pennsylvania constitution, where no such good faith exception has been found to exist." *Id.* at 26. He proceeds to provide this Court with an *Edmunds* analysis on the multifactor test found in that landmark case. *See id.* at 27-37. Rothhaar has also waived this argument.

Again, "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This is because "issue preservation is foundational to proper appellate review." *In re F.C. III*, 2 A.3d 1201, 1211 (Pa 2010). "Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity." *Trigg*, 229 A.3d at 269.

As our review of the suppression-court record reveals, Rothhaar did not argue *any* of the *Edmunds* factors in the suppression court. Nor did he develop an argument as to *why that court* should depart from the federal attenuation doctrine by pointing to any adequate, independent state grounds.[5]

---

[5] "Adequate and independent state grounds" refer to a jurisdictional dividing line for the Supreme Court of the United States when it decides if it will issue a writ of *certiorari* to a state court. If the state court's judgment rests on adequate, independent state law, the Supreme Court lacks federal-question jurisdiction and will refuse *certiorari*. *See, e.g.*, *Republican National Committee v. Burton*, 455 U.S. 1301, 1302, (1982) (Rehnquist, J., stating
*(Footnote Continued Next Page)*

As a result, the suppression court never decided in the first instance the question of whether the state constitution compels it to depart from *Strieff*, *supra*, or the attenuation doctrine as a whole. Hence, there is no alleged misapplication of the state constitution to correct, because the suppression court did not decide the motion to suppress based on the state constitution. We simply cannot decide whether the suppression court erred by refusing to depart from the holding in *Strieff*, when Rothhaar never informed the suppression court that it needed to depart from *Strieff*.

The suppression court only addressed the claim and argument that Rothhaar made to it – *i.e.*, whether the facts of *Strieff* applied to this case. The suppression court concluded that they do, and Rothhaar elected not to challenge that ruling on appeal.

Instead, Rothhaar wrongfully accuses the suppression court of "reading" the federal attenuation doctrine into the state constitution. ***See*** Rothhaar's Brief at 26. In actuality, Rothhaar's federal-law-only arguments to the suppression court "read" the attenuation doctrine into the state constitution, because he treated the protections of the two constitutions as coextensive. ***See*** Omnibus Pre-Trial Motion at 2-3; ***see also*** N.T., 1/31/23, at 87-88. As mentioned, the only case that Rothhaar relied upon at the second

_____

"this Court has no jurisdiction to review decisions based on adequate, nonfederal grounds.") (citing ***Zacchini v. Scripps-Howard Broadcasting Co.***, 433 U.S. 562, 568, (1977); ***Cramp v. Board of Public Instruction***, 368 U.S. 278, 281 (1961)). Without adequate, independent state grounds, the state court's decision rests on federal law, and the Supreme Court of the United States has final appellate jurisdiction over the case.

suppression hearing to oppose application of the attenuation doctrine was **Hudson**, **supra**, another Supreme Court of the United States case. His argument to the suppression court was based **exclusively** on federal law. By relying exclusively on federal law, Rothhaar conceded that Article I, § 8 afforded him no greater protection than the Fourth Amendment.

Rather than the suppression court reading the attenuation doctrine into the state constitution, it was Rothhaar who did so by concession. He gave the suppression court no opportunity to rule upon the **Edmunds** factors in the first instance. He presented no argument regarding why any **Edmunds** factor necessitated the suppression court's departure from **Strieff**. Thus, Rothhaar afforded the suppression court no opportunity to extend the heightened protections of Article I, § 8 of the Pennsylvania constitution to him. He left the suppression court with only the Fourth Amendment jurisprudence, which included the attenuation doctrine as articulated in **Strieff**.

Indeed, the Supreme Court of Pennsylvania has recently held that an appellant's failure to preserve a departure claim for appellate review results in waiver. **Commonwealth v. Foster**, 332 A.3d 1187 (Pa. 2025). The High Court said:

> [Appellant] Foster presents a second issue in his brief, arguing that, if we conclude he is not entitled to relief under the federal constitution, we should find Article I, § 9 of the Pennsylvania Constitution provides "greater protection than its federal counterpart" and "proscribes police from lying about the nature of their interaction" with a potential suspect. Foster's Brief at 25 . . .

- 15 -

Recognizing that [the Supreme Court of Pennsylvania] has not interpreted Article I, § 9 as providing "any greater protection than" the Fifth Amendment with regard to a defendant's inculpatory statement, Foster engages in an *Edmunds* analysis. *See* Foster's Brief at 25 n.4 . . . He argues: (1) this Court has previously held that, despite similar language, "Section 9 can provide greater protection than the Fifth Amendment;" (2) other states have determined that police misrepresentations about the nature of an interview may lead to an involuntary statement; and (3) the "risk of false confessions, and relatedly, wrongful convictions will necessarily decline" if we limit police manipulation in interviews. Foster's Brief at 32-43 . . .

The Commonwealth, however, insists that Foster has waived this claim, and we agree . . . Although Foster cited Article I, § 9 in his suppression motion, and repeated the citation in his appellee brief before the Superior Court, he did not develop any argument (before either lower court) that the Pennsylvania constitution provides greater protection against self-incrimination than its federal counterpart . . . Thus . . . Foster has waived the claim here. *See Commonwealth v. Bishop*, 655 Pa. 270, 217 A.3d 833, 841-842 (2019) (concluding that, while appellant raised departure claim under Pennsylvania constitution in petition for allowance of appeal, appellant nevertheless waived claim when appellant did not argue issue before suppression court nor develop any reasoning before appellate court).

*Id.* at 1194 n.9 (some punctuation omitted).

Like the defendant in *Foster*, Rothhaar did not argue for departure from the Fourth Amendment's attenuation-doctrine exception to the exclusionary rule in the suppression court. Thus, he failed to preserve this novel, state-constitutional claim for our appellate review.

In addition, even if Rothhaar had argued for heightened protections at the suppression hearing, he neglected to include this claim of error in either his 1925(b) Statement of Errors Complained of on Appeal or his Supplemental Statement of Errors Complained of on Appeal. Hence, Rothhaar's failure to

apprise the court of common pleas that he intended to argue for heightened protections in this Court is another reason he waived the claim. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived.").

Therefore, we dismiss Rothhaar's claim for heightened protections under Article I, § 8 of the state constitution as waived.

**B. Admission of Testimony**

For his second and final appellate issue, Rothhaar argues that the "trial court abused its discretion in permitting the Commonwealth to present the testimony of Russell Mitchell." Rothhaar's Brief at 38. At the outset of his brief, Rothhaar correctly states, "Admissibility of evidence is within the sound discretion of the trial court, and [appellate courts] will not disturb an evidentiary ruling absent an abuse of that discretion." *Id.* at 5 (quoting *Commonwealth v. Hicks*, 156 A.3d 1114, 1125 (Pa. 2017)). However, he neglects to define an abuse of discretion. This proves fatal to this evidentiary issue, because Rothhaar attempts to convince us that the trial court's decision to admit the testimony was incorrect, rather than an abuse of discretion.

As the Supreme Court of Pennsylvania has explained, "Importantly, an appellate court should not find that a trial court abused its discretion merely because the appellate court disagrees with the trial court's conclusion."

*Commonwealth v. Gill*, 206 A.3d 459, 467 (Pa. 2019). "Indeed, when reviewing the trial court's exercise of discretion, it is improper for an appellate court to 'step into the shoes' of the trial judge and review the evidence *de novo*." *Id.* (some punctuation omitted). "An appellate court will not find an abuse of discretion based on a ***mere error of judgment***, but rather where the trial court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* at 466–67. (some punctuation omitted) (emphasis added).

Here, Rothhaar disregards our deferential standard of review. He does not identify which type of abuse of discretion the trial court supposedly committed. Instead, Rothhaar reproduces – verbatim – his argument to the trial court that the evidence should be excluded, as if our standard of review were *de novo*. *See* Rothhaar's Brief at 38-39. It is not. *See Gill*, *supra*.

Next, he reviews the case that he cited to the trial court in detail. *See id.* at 40-41. Rothhaar then summarily declares that his defense "counsel's credibility with the jury . . . was undermined by the fact that the Commonwealth was permitted to present the testimony of [a] surprise witness and trial by ambush resulted." *Id.* at 43. "This simply cannot be condoned. As such, the trial court ***erred*** in permitting the Commonwealth to introduce this evidence." *Id.* (emphasis added).

These two sentences (the last of Rothhaar's argument) assert that the trial court "erred." This claim of error – rather than of an abuse of discretion

- 18 -

– reflects Rothhaar's disagreement with the trial court's judgment to admit Mr. Mitchell's testimony. He attempts to have us share his disagreement. But, as our standard of review makes clear, "an appellate court should not find that a trial court abused its discretion merely because the appellate court disagrees with the trial court's conclusion." *Gill*, 206 A.3d at 467.

Notably, Rothhaar fails to discuss the trial court's rationale for admitting the testimony – namely, that defense counsel opened the door to Mr. Mitchell's testimony by insinuating to the jury that Rothhaar did repair work on Mr. Capriotti's home. In the trial court's view, by insinuating a false version of events, defense counsel made Mr. Mitchell's testimony relevant to disprove defense counsel's factual insinuation in his opening statement.

The trial court opined that Rothhaar "opened the door" to Mr. Mitchell's testimony. Trial Court Opinion, 5/15/24, at 14-15 (quoting *Commonwealth v. McCabe*, 498 A.2d 933, 934 (Pa. Super. 1985)). In the trial court's view, prior to the first day of trial, the Commonwealth had no reason to think it would need to call Mr. Mitchell as a witness.

Rothhaar makes no contention that the foregoing logic was manifestly unreasonable. He cites to no Rule of Evidence or Rule of Criminal Procedure that the trial court allegedly overrode or misapplied by allowing Mr. Mitchell to testify. Finally, Rothhaar makes no contention that the trial court's decision was the result of partiality, prejudice, bias or ill-will. Accordingly, he does not develop a sufficient appellate argument that the trial court's decision was an abuse of discretion, much less persuade that such an abuse occurred.

Hence, Rothhaar's evidentiary issue affords him no appellate relief. We dismiss his final issue as meritless.

Judgment of sentence affirmed.

Judge Sullivan files a Concurring Memorandum.

Judge Beck files a Concurring/Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/27/2025